**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| ALICIA GARZA, | § | |
| Plaintiff, | § | |
| v. | § | Civil Action No. 3:21-CV-0826-M-BH |
| | § | |
| KILOLO KIJAKAZI, ACTING | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| Defendant. | § | Referred to U.S. Magistrate Judge[1] |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Based on the relevant filings, evidence and applicable law, the final decision of the Commissioner of Social Security (Commissioner) denying the plaintiff's claims for Supplemental Security Income (SSI) should be **AFFIRMED**.

### I.    BACKGROUND

On April 22, 2019, Alicia Garza (Plaintiff) filed her application for SSI under XVI of the Social Security Act, alleging disability beginning March 29, 2019. (doc. 20-1 at 164-69.)[2] Her claim was denied initially on September 25, 2019, and upon reconsideration on January 3, 2020. (*Id.* at 52-71.) After requesting a hearing before an Administrative Law Judge (ALJ), she appeared and testified at a hearing on August 26, 2020, which was held by telephone due to the "extraordinary circumstance" presented by the coronavirus pandemic. (*Id.* at 15, 27-45, 89-91.) On October 23, 2020, the ALJ issued a decision finding her not disabled. (*Id.* at 15-22.) Plaintiff timely appealed the ALJ's decision to the Appeals Council on November 19, 2020. (*Id.* at 161-63.) The Appeals Council denied her request for review on February 9, 2021, making the ALJ's

---

[1] By *Special Order 3-251*, this social security appeal was automatically referred for proposed findings of fact and recommendation for disposition.

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

decision the final decision of the Commissioner. (*Id.* at 5-8.) She timely appealed the Commissioner's decision under 42 U.S.C. § 405(g). (doc. 1.)

**A.  Age, Education, and Work Experience**

Plaintiff was born on September 21, 1960; she was 59 years old at the time of the hearing. (doc. 20-1 at 29.) She had a high school education, could communicate in English, and had past relevant work as an order filler. (*Id.* at 43, 228.)

**B.  Medical, Psychological, and Psychiatric Evidence**

Plaintiff had an intracerebral hemorrhage in June 2012. (*Id.* at 598.) She was diagnosed with chronic kidney disease in January 2017, and with suspected glaucoma in November 2017. (*Id.* at 559, 574.)

In February 2018, Plaintiff had normal extremities, heart rate, heart rhythm, intact sensation, no edema, and her blood pressure was 135/76. (*Id.* at 332.) James Zachary Keeton, M.D., recommended diet, exercise, and weight loss, and assessed her with hypertriglyceridemia due to diabetes and smoking. (*Id.* at 412.)

In May 2018, Plaintiff quit smoking. (*Id.* at 325.) The following month, she had soft abdomen and clear lungs, as well as normal breath sounds, heart rate, heart rhythm, mood, and affect. (*Id.* at 324.) Her medications included lisinopril, amlodipine and metoprolol. (*Id.*)

In December 2018, Plaintiff presented for medication refills and reported blood glucose levels averaging 120. (*Id.* at 319.) She denied chills, fever, cough, shortness of breath, and chest pain, and she had clear lungs and normal heart rate, rhythm, mood, affect, and behavior. (*Id.* at 318-19.) She was assessed with type 2 diabetes mellitus without complications, dyslipidemia, and essential hypertension; her medications were continued, and exercise was advised. (*Id.* at 319.)

In January 2019, a computed tomography (CT) scan for renal colic showed mild

nonspecific perinephric stranding. (*Id.* at 356.) In July 2019, Plaintiff had a rash on her distal leg skin and was diagnosed with uncontrolled diabetes mellitus. (*Id.* at 482.) She had not taken her hypertension or diabetes medication in months and had missed a renal appointment. (*Id.*) Mary H. Rivero-Homer, M.D., recommended diet, exercise, and medication compliance. (*Id.*)

In October 2019, Plaintiff reported frequent episodes of anxiety; she had normal mood, affect, and behavior, and was started on citalopram. (*Id.* at 630.)

In January 2020, Plaintiff had no focal deficits and normal mood and behavior. (*Id.* at 600.) Her hyperlipidemia was stable on atorvastatin, and she had stage 3 chronic kidney disease. (*Id.* at 636.) She was started on insulin due to inadequately controlled diabetes mellitus, and exercise was recommended. (*Id.* at 639.) By June 2020, she had missed multiple appointments with the renal clinic, and her kidney disease had worsened. (*Id.* at 644.)

**C.  August 26, 2020 Hearing**

On August 26, 2020, Plaintiff and an impartial VE testified at a hearing before the ALJ. (*Id.* at 27-45.) Plaintiff was represented by an attorney. (*Id.*)

*1.  Plaintiff's Testimony*

Plaintiff testified that she had no job or income and lived with her disabled mother, who paid for utilities and groceries. (*Id.* at 33-35.) Plaintiff had not driven in 8 years and relied on her son or daughter for rides. (*Id.* at 34.)

Eight years earlier, Plaintiff had a brain aneurysm, which affected her memory, but it had gone untreated because it "had to cure on its own." (*Id.* at 35, 40.) She sometimes had trouble remembering where she was going or what she planned to buy. (*Id.* at 35-36.) She was afraid of handling money and not giving people the correct amount. (*Id.* at 36.)

In 2020, Plaintiff started having issues with her legs. (*Id.* at 37.) Although she had good

circulation, her untreated diabetes had turned her legs purple and prevented her from walking more than 100 feet at a time. (*Id.* at 35, 37, 40-41.) She had always had bad knees, but recently, pain radiated from her ankles. (*Id.* at 37.) She had never had or used a cane, walker or any sort of assistive device, and could only stand 40 minutes at most before she needed to sit. (*Id.* at 40-41.) Her arms, shoulders and back hurt when sweeping and mopping, and she needed a break after 20 minutes of chores. (*Id.* at 41-42.) Her kidneys functioned at about 14 percent, and they caused her back to hurt "every once in a while." (*Id.* at 35, 38.) Two weeks earlier, she had visited a kidney specialist; past appointments had gotten postponed due to insurance issues or the pandemic. (*Id.* at 38.) She had been treated for hypertension, which gave her headaches and made her feel lightheaded every two or three days. (*Id.* at 38-39.) The foods she ate affected her blood pressure, which she monitored with a home machine. (*Id.* at 38.) Her medications made her drowsy. (*Id.* at 35.)

### 2. *VE's Testimony*

The VE testified that Plaintiff had relevant past work as an order filler (DOT 222.487-014, light, SVP-3)[3]. (*Id.* at 43.)

The VE considered a first hypothetical individual, who could perform a full range of medium exertion work, was approaching advanced age, and had at least a high school education and Plaintiff's past work. (*Id.*) The individual could perform Plaintiff's past work as she performed it and as generally performed in the national economy. (*Id.*)

The VE considered a second hypothetical individual who was limited to light work and could occasionally climb ramps or stairs, but never climb ladders, ropes or scaffolds, and never push or pull, including the operation of foot controls with the lower extremities. (*Id.* at 43-44.) The

---

[3] DOT stands for Dictionary of Occupational Titles, and SVP stands for Specific Vocation Preparation.

individual could perform Plaintiff's past work. (*Id.* at 44.)

The VE considered a third hypothetical with the same limitations as the second, but who could understand and remember no more than simple instructions; the individual could not perform Plaintiff's past work. (*Id.*)

On cross-examination, the VE confirmed he did not consider any limitations other than those outlined by the ALJ. (*Id.*)

### D.  **ALJ's Findings**

The ALJ issued his decision on October 23, 2020. (*Id.* at 12-22.) At step one, he found that Plaintiff had not engaged in substantial gainful activity since May 16, 2019, the application date. (*Id.* at 17.) At step two, he found that Plaintiff had the severe impairments of diabetes mellitus, hypertension, and chronic kidney disease, as well as non-severe impairments of anxiety and cognitive deficits associated with remote intracranial hemorrhage. (*Id.*) At step three, the ALJ concluded that Plaintiff's impairments did not singularly or in combination meet or medically equal the required criteria for any of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925–416.926). (*Id.* at 19.) He expressly considered Listings 4.00 (cardiovascular system) and 9.00 (endocrine disorders) in his findings. (*Id.*)

Next, the ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform the full range of medium work as defined in 20 C.F.R. § 416.967(c). (*Id.*) At step four, he determined that Plaintiff was unable to perform her past work. (*Id.* at 21.) At step five, the ALJ found that transferability of job skills was not material to the determination of disability because the Medical-Vocational Rules supported a finding that she was not disabled regardless of whether she had transferable job skills, but considering her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could perform.

(*Id.* at 21-22.) Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined by the Social Security Act, "since May 16, 2019, the date the application was filed". (*Id.*)

## II.    STANDARD OF REVIEW

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The scope of judicial review of a decision under the supplemental security income program is identical to that of a decision under the social security disability program. *Davis v. Heckler*, 759 F.2d 432, 435 (5th Cir. 1985). Moreover, the relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income. *See id.* The court may therefore rely on decisions in both areas without distinction in reviewing an ALJ's decision. *See id.*

To be entitled to social security benefits, a claimant must prove that he or she is disabled

as defined by the Social Security Act. *Leggett*, 67 F.3d at 563-64; *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)).

Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either

by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

### III.    ISSUES FOR REVIEW

Plaintiff presents three issues for review:

1.  The ALJ erred in failing to conduct a legally adequate listing analysis.

2.  The ALJ erred in assessing a[n] [RFC] based solely on an outdated State Agency assessment and the ALJ's own lay judgment.

3.  The appointment of Andrew Saul [Saul] as a single commissioner of [Social Security Administration (SSA)] who was removable only for cause and would serve a longer term than that of the president violated separation of powers. Accordingly, the decision in this case, by an ALJ and Appeals Council judges who derived their authority from [Saul], is constitutionally defective.

(doc. 23 at 1.)

### A.  **Listed Impairment**

Plaintiff argues that the ALJ "fail[ed] to properly address and analyze whether [her] condition was of listing level severity," and this was "a harmful legal error which prevents the Court from affirming his decision." (doc. 23 at 3, 6.)

The listed impairments in the Social Security regulations "are descriptions of various physical and mental illnesses ... most of which are categorized by the body system they affect." *Sullivan v. Zebley*, 493 U.S. 521, 529-30 (1990). "Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results." *Id.* at 530. The claimant bears the burden of proving that her impairments meet or equal the criteria found within the Listings. *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990); *Henson v. Barnhart*, 373 F.Supp.2d 674, 685 (E.D. Tex. 2005) (citing *McCuller v. Barnhart*, 72 F. App'x 155, 158 (5th Cir. 2003)). "For a claimant

to show that [her] impairment matches a Listing, it must meet *all* of the specified medical criteria." *Sullivan*, 493 U.S. at 530 (emphasis in original). The criteria in the Listings are designed to be "demanding and stringent." *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994). This is because the Listings "were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Zebley*, 493 U.S. at 532. If a claimant fails to meet her burden, the ALJ's finding is supported by substantial evidence. *Henson*, 373 F. Supp. at 685 (citing *Selders*, 914 F.2d at 620).

The decision of whether a claimant meets or equals a Listing is ultimately reserved to the Commissioner. *Malone v. Colvin*, No. H-13-3043, 2015 WL 1291824, *14 (S.D. Tex. Mar.16, 2015) (citing 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); Social Security Ruling (SSR) 96-5p, 1996 WL 374183, at *2-3, 5 (S.S.A. 1996); SSR 96-6p, 1996 WL 374180, at *3-4 (S.S.A. July 2, 1996). The ALJ should, however, identify the listed impairment and explain how he determined that the symptoms were insufficiently severe to meet it. *See Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

### 1. *Listing 6.00*

Plaintiff argues that the ALJ committed reversible error because he "never explained how or why he failed to incorporate the listing evaluation under section 6.00 into his decision." (doc. 23 at 6.) She does not contend that she meets the requirements for Listing 6.00; "[t]he issue is not whether [her] impairments met or equaled a listing, but that the ALJ committed legal error in failing to conduct a listing analysis for an impairment that he found severe." (doc. 27 at 1.)

Listing 6.00 includes genitourinary disorders resulting in chronic kidney disease, such as chronic glomerulonephritis, hypertensive nephropathy, diabetic nephropathy, chronic obstructive uropathy, and hereditary nephropathies. 20 C.F.R. pt. 404, subpt. P, app. 1, § 6.00(A).[4] The

---

[4] The Listings under 6.00 include:

required evidence should document the signs, symptoms, and laboratory findings of the claimant's

chronic kidney disease, including the estimated glomerular filtration rate (eGFR) and a biopsy

pathology report, if any. *Id.* § 6.00(B)(1)-(3). Other factors considered under this listing include a

---

6.03 Chronic kidney disease, with chronic hemodialysis or peritoneal dialysis (*see* 6.00(C)(1)).

6.04 Chronic kidney disease, with kidney transplant. Consider under a disability for 1 year following the transplant; thereafter, evaluate the residual impairment (*see* 6.00(C)(2)).

6.05 Chronic kidney disease, with impairment of kidney function, with A and B:
    A. Reduced glomerular filtration evidenced by one of the following laboratory findings documented on at least two occasions at least 90 days apart during a consecutive 12-month period:
        1. Serum creatinine of 4 mg/dL or greater; or
        2. Creatinine clearance of 20 ml/min. or less; or
        3. [eGFR] of 20 ml/min/1.73m2 or less.
    AND
    B. One of the following:
        1. Renal osteodystrophy (*see* 6.00(C)(3)) with severe bone pain and imaging studies documenting bone abnormalities, such as osteitis fibrosa, osteomalacia, or pathologic fractures; or
        2. Peripheral neuropathy (*see* 6.00(C)(4)); or
        3. Fluid overload syndrome (*see* 6.00(C)(5)) documented by one of the following:
            a. Diastolic hypertension greater than or equal to diastolic blood pressure of 110 mm Hg despite at least 90 consecutive days of prescribed therapy, documented by at least two measurements of diastolic blood pressure at least 90 days apart during a consecutive 12-month period; or
            b. Signs of vascular congestion or anasarca (*see* 6.00(C)(6)) despite at least 90 consecutive days of prescribed therapy, documented on at least two occasions at least 90 days apart during a consecutive 12–month period; or
        4. Anorexia with weight loss (*see* 6.00(C)(7)) determined by body mass index (BMI) of 18.0 or less, calculated on at least two occasions at least 90 days apart during a consecutive 12-month period.

6.06 Nephrotic syndrome, with A and B:
    A. Laboratory findings as described in 1 or 2, documented on at least two occasions at least 90 days apart during a consecutive 12-month period:
        1. Proteinuria of 10.0 g or greater per 24 hours; or
        2. Serum albumin of 3.0 g/dL or less, and
            a. Proteinuria of 3.5 g or greater per 24 hours; or
            b. Urine total-protein-to-creatinine ratio of 3.5 or greater.
    AND
    B. Anasarca (*see* 6.00(C)(6)) persisting for at least 90 days despite prescribed treatment.

6.09 Complications of chronic kidney disease (*see* 6.00(C)(8)) requiring at least three hospitalizations within a consecutive 12-month period and occurring at least 30 days apart. Each hospitalization must last at least 48 hours, including hours in a hospital emergency department immediately before the hospitalization.

20 C.F.R. pt. 404, subpt. P, app. 1, §§ 6.01-6.09.

claimant's dialysis or any complications, such as hospitalization. *Id.* § 6.00(C)((1)-(7).

In *Audler*, the Fifth Circuit held that the ALJ committed legal error when she "summarily concluded" that the claimant's impairments were not severe enough to meet or medically equal one of the listed impairments, but "did not identify the listed impairment for which [the claimant's] symptoms fail[ed] to qualify," and did not "provide any explanation as to how she reached the conclusion[.]" 501 F.3d at 448. Noting that an ALJ was not "always required to do an exhaustive point-by-point discussion," it stated that it simply could not "tell whether her decision [was] based on substantial evidence" because she "offered nothing to support her conclusion at this step." *Id.* (internal quotation marks omitted) (quoting *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986)).

Here, after summarizing the medical evidence, including the findings as to Plaintiff's chronic kidney disease, and making a credibility determination, the ALJ specifically found that "the evidence of record does not reflect all of the findings required in the List of Impairments, nor do the clinical findings, imaging studies, or laboratory tests show[ ] the severity contemplated in the listings." (doc. 20-1 at 17-19.) He concluded that "[a]lthough the evidence establishes underlying medical conditions capable of producing some limitations, the substantial evidence of record does not confirm disabling limitations arising from those impairments." (*Id.* at 17-22.) The ALJ did not expressly compare Plaintiff's chronic kidney disease to Listing 6.00 or any other Listing. (*Id.*)  Under *Audler*, this was error.

### 2.  *Harmless Error*

The Fifth Circuit has held that "[p]rocedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected.... The major policy underlying the harmless error rule is to preserve judgments and to avoid waste of time." *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir.1989) (quoting *Mays v.*

*Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988)) (per curiam). "[P]rocedural improprieties ... will therefore constitute a basis for remand *only if* such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Alexander v. Astrue*, 412 F. App'x 719, 722 (5th Cir. 2011) (emphasis added); *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988). The ALJ's error is harmless if the substantial rights of a party have not been affected. *See Alexander*, 412 F. App'x at 722. Courts must therefore consider whether an ALJ's error in failing to discuss why a claimant did not meet a Listing at step three was harmless. *See Audler*, 501 F.3d at 448 (citing *Morris*, 864 F.2d at 334) (applying harmless error analysis when the court ruled that the ALJ's failure to set out the bases for her decision at step three was erroneous).

"In considering whether a step three error was harmless in *Audler*, the Fifth Circuit reviewed the evidence to determine whether the claimant had demonstrated that she satisfied all the criteria of the Listing at issue." *Pannell v. Astrue*, No. 3:11-CV-2385-D, 2012 WL 4341813, at *3 (N.D. Tex. Sept. 21, 2012) (citing *Audler*, 412 F.3d at 448-49). As noted, however, Plaintiff *does not* contend that she meets the requirements under Listing 6.00, and she presents no evidence beyond what the ALJ considered to show that she meets the requirements. She claims that the failure to conduct a listing analysis for an impairment found to be severe is legal error requiring remand. (doc. 27 at 1.)

The ALJ noted at the outset that he had considered all symptoms and the extent to which these symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence. (doc. 20-1 at 19.) In particular, he considered that Plaintiff had been diagnosed with chronic kidney disease in January 2017; she had stage 3 chronic kidney disease and was started on insulin in January 2020 due to inadequately controlled diabetes mellitus; she had missed multiple appointments with the renal clinic; and she had missed several appointments and her

12

kidney disease was worsening in June 2020. (*Id.* at 20 (citing *id.* at 559, 636, 644.)) He specifically noted his comparison of her "erratic" treatment seeking and "minimal" subjective complaints with her conservative treatment during the relevant period. (*Id.*) The ALJ also considered the SAMCs' opinions that Plaintiff was capable of performing the full range of medium work and found them persuasive because they were consistent with the record as a whole. (*Id.* at 21 (citing *id.* at 52-70.)) Plaintiff presents no evidence beyond that considered by the ALJ.

Even if Plaintiff had argued that she met Listing 6.00, there is no evidence to show that she met all the criteria. The record does not show that she had the specific dialysis required under Listing 6.03, or that she had a kidney transplant required under Listing 6.04. (*Id.* at 315-674.) It also does not show that she had the required levels of serum creatinine, creatinine clearance, and eGFR, or that she had any of the illnesses under Listing 6.05. (*Id.* at 314-674) It also fails to show that she had anasarca, that her laboratory findings met the requirements under Listing 6.06, or that her hospitalizations met Listing 6.09. (*Id.* at 315-674.)

Because Plaintiff failed to meet her step three burden to provide any documentation of the manifestations of her chronic kidney disease during the relevant period, she failed to show that she meets all the criteria under Listing 6.00. The ALJ's step three finding that Plaintiff was not disabled between the date of her application and the date of his decision is supported by substantial evidence. *See Chiles v. Colvin*, No. 3:12-CV-3516-L-BH, 2014 WL 630888, at *11 (N.D. Tex. Feb. 18, 2014) (holding that because the plaintiff failed to meet his step three burden to provide documentation of the manifestations of his HIV infection during the relevant period, he failed to show that his HIV infection met Listing 14.08).  The ALJ's error in failing to expressly compare her chronic kidney disease to Listing 6.00 or any other Listing is harmless, and remand is not required on this basis.

**B.  Duty to Develop the Record**

Plaintiff next argues that the ALJ erred by relying on an "outdated" SAMC assessment and on his own lay judgment of "very complex clinical and lab findings", instead of "securing a medical expert or consultative examination to determine limitations" of her "worsened condition." (doc. 23 at 8.) The Commissioner responds that Plaintiff has failed to show the need for a discretionary consultative examination. (doc. 26 at 12.)

The ALJ has a duty to fully and fairly develop the facts relative to a claim for benefits. *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000) (citing *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)). When the ALJ fails in this duty, he does not have before him sufficient facts upon which to make an informed decision, and his decision is not supported by substantial evidence. *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996); *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984). For this reason, a reviewing court "will reverse the ALJ's decision … if the claimant shows that (1) the ALJ failed to fulfill his duty to develop the record adequately and (2) that failure prejudiced the plaintiff."[5] *Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) (citing *Brock*, 84 F.3d at 728). The duty to obtain medical records generally belongs to the claimant, however. *See Gonzalez v. Barnhart*, 51 F. App'x 484 (5th Cir. 2002); *Hawkins v. Astrue*, No. 3:09-CV-2094-BD, 2011 WL 1107205 at *7 (N.D. Tex. Mar. 25, 2011).

"The decision to order a consultative examination is within the ALJ's bailiwick." *Harper v. Barnhart*, 176 F. App'x 562, 566 (5th Cir. 2006). "An ALJ's duty to develop the record further is triggered *only when* there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (5th Cir. 2001)

---

[5] "To establish prejudice, a claimant must show that [s]he could and would have adduced evidence that might have altered the result." *Hardine v. Kijakazi*, No. 21-60226, 2022 WL 2070399, at *2 (5th Cir. 2022) (citing *Brock*, 84 F.3d at 728 (quotation omitted)).

14

(emphasis added). A consultative examination is required "only if the record establishes that such an examination is *necessary* to enable [him] to make the disability decision". *Hardman v. Colvin*, 820 F.3d 142, 148 (5th Cir. 2016) (emphasis in original) (citing *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987) (per curiam); *see Hardine*, 2022 WL 2070399, at *2 (citing 20 C.F.R. § 404.1519a(b), and holding a consultative examination "may be required 'to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow [the SSA] to make a determination or decision on [a] claim'")).

In the Fifth Circuit, a consultative evaluation is not necessary when the record supports a conclusion that the claimant is not disabled. *See Brock*, 84 F.3d at 728 (citing *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977)). Further, it is not required unless the record raises a "suspicion" concerning an impairment. *See Jones*, 829 F.2d at 526 (citing 20 C.F.R. § 416.1444). Isolated comments in the record about a claimant's impairment are not sufficient to raise a suspicion of an impairment. *See Pierre v. Sullivan*, 884 F.2d 799, 802-03 (5th Cir. 1989) (per curiam) (holding that "[a] few instances in the record noting diminished intelligence" were insufficient to raise suspicion that claimant was mentally retarded) (citations omitted); *Brock*, 84 F.3d at 728 (holding claimant's references amounted to isolated comments because he did not mention non-exertional impairments in his original request for benefits, never sought medical treatment for such impairments, and did not mention these impairments at his hearing). Moreover, the duty to develop the record can be effectuated by the ALJ's questioning of the claimant regarding her education, training, past work history, the circumstances of her injury, daily routine, pain, and physical limitations, and providing an opportunity to add anything else to the record. *See Sun v. Colvin*, 793 F.3d 502, 509 (5th Cir. 2015) ("Consistent with that description, the court often focuses on the ALJ's questioning of the claimant in order to determine whether the ALJ gathered the information

necessary to make a disability determination.") (citing *Brock*, 84 F.3d at 728).

Here, the ALJ considered a medical record of almost 700 pages that included more than 5 years of treatment notes from Plaintiff's medical visits and laboratory findings, as well as the opinions of the SAMCs. (*See* doc. 20-1.) There is no indication that the evidence before him was ambiguous, inadequate, inconsistent, or that he lacked sufficient facts upon which to make a disability decision. *See Hardine*, 2022 WL 2070399, *2; *Mayes*, 276 F.3d at 459-60. Instead, "[a]fter careful consideration of all the evidence", the ALJ noted that the "objective findings" of Plaintiff's physical exams were consistently normal and "support[ed] the conclusion that she could perform medium work." (doc. 20-1 at 20.) He also gave Plaintiff an opportunity to add additional written evidence, which he admitted into the record, as specifically noted in his decision. (*Id.* at 15); *see also Sun*, 793 F.3d 502, 509.

Moreover, in finding that Plaintiff experienced no greater than mild to moderate functional limitations upon the ability to perform basic work activities, (*id.* at 21), the ALJ properly considered the evidence in the record, including her treatment notes, laboratory findings, the SAMC opinions, and her own testimony, to interpret the medical evidence and determine her RFC. *Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012) ("What [the plaintiff] characterizes as the ALJ substituting his opinion is actually the ALJ properly interpreting the medical evidence to determine his capacity for work."). He was not required to order a consultative examination because there is substantial evidence to support his RFC determination. *See Smith v. Berryhill*, No. CV H-18-2490, 2019 WL 3557586, at *9 (S.D. Tex. July 11, 2019), *report and recommendation adopted*, No. CV H-18-2490, 2019 WL 3548850 (S.D. Tex. Aug. 5, 2019) (finding that the ALJ was not obligated to order a consultative examination).

Plaintiff argues that the ALJ noted the June 8, 2020 medical report that "show[ed]

worsening kidney function", but he did not note her "complaints of leg pain with walking". (doc. 23 at 8 (citing doc. 20-1 at 644).) First, Plaintiff never alleged "leg pain with walking" as an impairment in her request for benefits. Her only asserted impairments included a brain aneurysm, "HBP/HTN", diabetes, high cholesterol, and memory loss, (doc. 20-1 at 52-53), and on reconsideration of the initial denial, she specifically stated that she did not have any new physical or mental conditions, (*id.* at 62). Next, when asked on her function report how her illnesses, injuries, or conditions limited her ability to work or whether anything prevented her from going out alone, she noted her forgetfulness but made no mention of leg pain or walking issues. (*Id.* at 257.) Although she testified that she could walk no more than 100 feet, she also testified that she had never had or used a cane, walker or any sort of assistive device. (*Id.* at 41-42.) She did send a letter to the ALJ on June 5, 2020, requesting a consultative examination, but it was for the purpose of "properly assess[ing] [her] [RFC]" and did not mention leg pain or walking issues. (*Id.* at 293.) Notably, the medical evidence of record shows that Plaintiff complained of "leg pain with walking" only once during a period of more than five years. (*Id.* at 644.) "Isolated comments" about her alleged leg pain and walking issues, when viewed within the record as a whole, are not sufficient to raise a suspicion that she had a leg or walking impairment. *See Pierre*, 884 F.2d at 803. Because Plaintiff has not alleged that the record raises a "suspicion" concerning any other impairment, (doc. 23 at 7-8), she has not shown that a consultative examination was necessary. *See Jones*, 829 F.2d at 526.

Moreover, because Plaintiff was represented by counsel at the hearing, no "heightened duty to scrupulously and conscientiously explore all relevant facts" arose. *Castillo v. Barnhart*, 325 F.3d 550, 552-53 (5th Cir. 2003) (per curiam); *see Isbell v. Colvin*, No. 1:14-CV-006-C, 2015 WL 1208122, at *3 n.1 (N.D. Tex. Mar. 16, 2015) (noting that the ALJ did not have a heightened duty

17

to develop the record where the claimant was represented by counsel). As noted, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. Plaintiff has not demonstrated how a consultative examination would have led to a more favorable decision. The ALJ fulfilled his duty to fully and fairly develop the record, and remand is not required on this issue.[6]

## C.  Separation of Powers

Plaintiff argues that two recent Supreme Court decisions—*Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020), and *Collins v. Yellen*, 141 S. Ct. 1761 (2021)—mandate a finding that 42 U.S.C. § 902(a)(3), the statute governing the term and removal of the Commissioner of Social Security, violates the separation of powers. (doc. 23 at 9-12; doc. 27 at 4-10.) Because the Commissioner at the time of the relevant agency actions in this matter was unconstitutionally appointed under that statute, she contends, the actions by the Appeals Council are "constitutionally defective" and warrant remand.[7]

Removal of the Commissioner of the Social Security is governed by 41 U.S.C. § 902(a)(3). In *Seila Law LLC*, the Supreme Court held that the Consumer Financial Protection Bureau's removal statute, 12 U.S.C. § 5491(c)(3), which allowed for its director to be removed by the President of the United States only for "inefficiency, neglect of duty, or malfeasance of office," violated the separation of powers by insulating the director from removal by the President.  140 S. Ct. at 2197. In *Collins*, the Supreme Court held that a similar statute which limited the President

---

[6] Even if the ALJ should have ordered a consultative examination, Plaintiff has also not shown that she was prejudiced in that the additional evidence that would have been produced might have led to a different decision. The record shows conservative treatment, minimal subjective complaints, and relatively normal physical examinations. *See Thompson v. Colvin*, No. 4:12-CV-466-Y, 2013 WL 4035229, at *6 (N.D. Tex. Aug. 8, 2013); doc. 20-1 at 20-21. Any error was therefore harmless.

[7] Plaintiff initially also argued that the ALJ's delegation of authority in this case came from the Commissioner and "[wa]s therefore constitutionally defective." (doc. 23 at 9.) In her reply, she expressly abandoned this argument because the ALJ's decision was issued while the former President, who appointed the Commissioner, was still in office. (doc. 27 at 5.)

to removing the director of the Federal Housing Finance Agency (FHFA) only for cause also violated the separation of powers. 141 S. Ct. at 1783 (noting that "*Seila Law* is all but dispositive").

The Commissioner concedes that § 902(a)(3) violates the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause. (doc. 26 at 13 (citing Office of Legal Counsel, U.S. Dep't of Justice, Constitutionality of the Commissioner of Social Security's Tenure Protection, 2021 WL 2981542 (July 8, 2021)).) He argues that setting aside an unfavorable disability benefits determination on this basis is not warranted, however, because *Collins* requires a showing by the plaintiff that the unconstitutional restriction "actually caused her harm." (*Id.* (citing 141 S. Ct. at 1787-89) (noting it was "possible for an unconstitutional provision to inflict compensable harm" and remanding the case for determination of whether the unconstitutional removal provision "inflicted harm").)

Applying *Collins*, district courts in this circuit and across the country have held that plaintiffs raising the same constitutional challenge to the prior Commissioner's final decisions "must establish a 'link' between the adverse action and the unconstitutional tenure-protection provision" to warrant relief on this basis. *See, e.g., Hughes v. Kijakazi*, No. CV 20-2374, 2022 WL 1256704, at *21 (E.D. La. Mar. 9, 2022), *report and recommendation adopted*, No. CV 20-2374, 2022 WL 1238628 (E.D. La. Apr. 26, 2022); *Cooley v. Soc. Sec. Admin.*, No. CV 21-840, 2022 WL 1043693, at *7 (E.D. La. Feb. 4, 2022), *report and recommendation adopted*, No. CV 21-840, 2022 WL 1027144 (E.D. La. Apr. 6, 2022); *Harry E. B. v. Kijakazi*, No. 2:21-CV-00118-LEW, 2022 WL 669689, at *7 (D. Me. Mar. 6, 2022); *Shaun A. v. Comm'r of Soc. Sec.*, No. C21-5003-SKV, 2021 WL 5446878, at *5 (W.D. Wash. Nov. 22, 2021), *appeal docketed*, No. 22-35056 (9th Cir. Jan. 20, 2022).

Here, Plaintiff replies that she was harmed because the prior Commissioner's

"undermining and politicization of 'Social Security disability benefits'" "infringed upon the constitutional due process rights of disability benefit applicants like [her]". (doc. 27 at 7-8.) A growing number of courts have found this type of general argument insufficient to establish the necessary link between the adverse action and the unconstitutional provision. *See*, *e.g., Hughes*, 2022 WL 1256704, at *21 ("[T]he court here finds that a vague reference to regulations issued by a commissioner subject to an unconstitutional removal provision is not enough to require remand."); *Cooley*, 2022 WL 1043693, at *7 ("This Court finds no nexus between Section 902(a)(3) and Plaintiff's alleged harm and finds that Plaintiff cannot receive an SSA rehearing on his benefits claim."); *Sarah H. v. Comm'r of Soc. Sec.*, No. 3:21-CV-05149-JRC, 2021 WL 5770269, at *5 (W.D. Wash. Dec. 6, 2021) (claimant failed to show compensable harm under *Collins* when she failed to "identif[y] any new regulations, agency policies or directives [the prior] Commissioner [] installed that may have affected her claims"); *Shaun A.*, 2021 WL 5446878, at *5 (claimant's "reference to an unnamed White House official's justification for [the prior] Commissioner['s] removal[,]" including that he "was removed from office in part because he had undermined, politicized, and reduced due process protections for benefits appeals hearings," did not "indicate that [she] was harmed") (citation and internal quotation marks omitted); *see also Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1138 (9th Cir. 2021) ("[T]here is no link between the ALJ's decision awarding benefits and the allegedly unconstitutional removal provisions. And nothing commands us to vacate the decisions below on that ground."). The reasoning in these cases is persuasive, and the Court adopts it.

Without more, Plaintiff's general arguments are insufficient to show any link between the prior Commissioner's adverse decision in her case and the unconstitutional removal provision, and she has not otherwise shown that it "inflicted harm" on her.  Remand is not warranted on this basis.

## IV.    RECOMMENDATION

The Commissioner's decision should be **AFFIRMED**.

**SO RECOMMENDED** on this 21st day of June, 2022.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE